IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jermaine Harris, | C/A No. 0:13-696-DCN-PJG |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Ernest Rowe; Sharonda Sutton; Percy Jones; Warden Stevenson; Rosalyn Ellerbe; Dennis Patterson, | |
| Defendants. | |

The plaintiff, Jermaine Harris ("Harris"), a self-represented state inmate, filed this civil action against the named defendants.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion to dismiss or, in the alternative, for summary judgment. (ECF No. 49.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Harris was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 50.) Harris filed a response in opposition to the defendants' motion. (ECF No. 57.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

**BACKGROUND**

Harris alleges that he was transferred from Lee Correctional Institution ("LCI") to Broad River Correctional Institution ("BRCI") on November 8, 2010, after a prison riot in which he was

---

[1] The defendants' motion indicates that the defendant identified as Rosalyn Ellerbe is actually named Robyn Elerby. (ECF No. 49 at 1.)

Page 1 of 15



stabbed.² (ECF No. 33-1 at 3.) Upon his arrival at BRCI, Harris claims that he was "stripped down to his boxer shorts and placed in a barren observation cell" with only one blanket. (Id.) Harris complains that the cell was cold and that he was denied a mattress, making it difficult to rest. (Id. at 3-4.) Harris further alleges that the cell conditions exacerbated his pain from the stab wound and that he did not receive pain medication for five days. (Id. at 4.) Harris asserts that prison grievances regarding these matters were erroneously denied or left unprocessed. (Id. at 5.) During this time, Harris received a disciplinary charge for assault and battery related to the LCI riot. (Id.) Harris alleges due process violations associated with his disciplinary hearing for that offense. (Id.) Harris states that his disciplinary conviction was ultimately overturned by the South Carolina Administrative Law Court and remanded for another hearing. (Id. at 6.) Harris seeks monetary damages, the expungement of his disciplinary record, and the return of money taken as restitution for the disciplinary infraction. (Id. at 8.) Harris also seeks a declaratory judgment on his due process claims. (ECF No. 33 at 1.)

### DISCUSSION

**A.     Applicable Standards**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter,

---

² Harris filed an Amended Complaint in this action on June 20, 2013. (ECF No. 33.) To give liberal construction to the pleadings and preserve issues raised in the case, Harris's Complaint was appended to the Amended Complaint as an attachment. (ECF No. 33-1.)



accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

The court observes that it is required to liberally construe *pro se* complaints. Id. Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's factual allegations are assumed to be true. Erickson, 551 U.S. at 93 (citing Twombly, 550 U.S. 544, 555-56 (2007)). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Additionally, summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials



cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz, 405 U.S. 319, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

B.  **Defendants' Motion**

1.  **Official Capacity Claims**

To the extent that Harris is suing the defendants in their official capacities for monetary relief, they are entitled to summary judgment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As arms of the state, these defendants, who are all SCDC employees, are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity. See Will, 491 U.S. at 70-71. Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e). Accordingly, to the extent these defendants are sued in their official capacities, they are immune from suit. Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).



### 2. Eighth Amendment Claims

#### i. Deliberate Indifference–Medical Needs

Harris alleges that he did not receive pain medication for his stab wound until five days after his placement in the observation cell. (ECF No. 33-1 at 4.) Harris further claims that Defendants Jones and Sutton were aware of this fact as they allegedly discussed Harris's medical condition and treatment with concerned family members during that time period. (Id.) To establish a claim under the Eighth Amendment for deliberate indifference, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In the medical context, an inmate "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). With regard to the objective prong, a " 'serious . . . medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " Iko, 535 F.3d at 241 (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)). With regard to the subjective prong, a prison official is deliberately indifferent if he has actual knowledge of and disregards "the risk posed by the serious medical needs of the inmate." Iko, 535 F.3d at 241 (citing Farmer, 511 U.S. at 837). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.



Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

In support of their motion, the defendants have provided Harris's medical records, which show that Harris was seen repeatedly by BRCI medical staff for treatment of his stab wound. (See generally Medical Records, ECF No. 49-1.) Specifically, the records reflect that Harris was seen by medical staff upon his return from the hospital on November 8, 2010, and again the next day for cleaning and re-dressing of the wound. (Id. at 8.) On November 10, 2010, medical records state that Harris pulled out some of his sutures, allegedly because he was given Motrin, but no other pain medication. (Id. at 7.) Harris's wound was cleaned and re-dressed and he was provided two "Tylenol #3's." (Id.) It appears Harris pulled out more of his sutures later that day, not because of "his medication this time [but purportedly because] he was upset with the guards." (Id. at 6.) The wound was again cleaned and re-dressed. (Id.). On November 11, 2010, Harris's dressing was

changed two times and he was given Tylenol #3 on each of those visits. (Id. at 5.) Medical records show that Harris began indicating that he was in no pain on November 12, 2010; however, his wound was consistently cleaned and re-dressed several times each day. (Id. at 1-4.) Harris was provided Tylenol #3 prior to the re-dressing on his wound on November 14, 2010. (Id. at 4.)

At most, the medical records reflect that confusion over an on-call physician listed the night of November 9, 2010 may have prevented the defendants from providing Harris pain medication on that date. (Id. at 7.) However, such facts are insufficient to demonstrate treatment "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness," Miltier, 896 F.2d at 851. Because the record unequivocally shows that Harris was frequently seen and treated by medical staff for his stab wound and provided Motrin or Tylenol #3 during the time period in question, although possibly missing one dose inadvertently, his claim of deliberate indifference to a serious medical need fails. As such, the defendants' motion should be granted as to Harris's medical indifference claim.

### ii.   Deliberate Indifference–Conditions of Confinement

Harris also alleges that his constitutional rights were denied when he was placed in a cold observation cell for nine days with only one thin blanket and a pair of boxer shorts. (ECF No. 33-1 at 3; ECF No. 57 at 1, 6.) "The Constitution does not mandate comfortable prisons;" however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer, 511 U.S. at 832 (internal quotations and citations omitted). To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d



1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832. As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff asserting unconstitutional conditions of confinement must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. See Strickler, 989 F.2d at 1380-81. However, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Harris alleges that he was cold, uncomfortable, and unable to properly rest without a mattress and clothing. (ECF No. 33-1 at 3-4.) Harris further alleges that he "complained constantly" about the conditions in his cell to prison employees, including Defendant Jones, and was informed that Defendants Sutton and Stevenson had ordered the observation cell placement. (Id. at 4.) However, Harris's Amended Complaint fails to allege or demonstrate that he suffered a serious or significant physical or mental injury as a result of the alleged conditions, or that there was a substantial risk of such serious harm. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (stating that only an "extreme deprivation," which is a "serious or significant physical or emotional injury resulting

from the challenged conditions," or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement). Further, while Harris's response in opposition to the defendants' motion alleges that the nine-day period of confinement "posed harm to [his] physical, mental and emotional health," he provides no factual information to show such injury. (ECF No. 57 at 6); see Sweet v. South Carolina Dep't of Corr., 529 F.2d 854, 865 (4th Cir. 1975) ("[C]onfinement in the 'strip cell' has often been found inoffensive under the constitutional provision if the confinement is for a short duration . . . ."). Accordingly, the defendants are entitled to summary judgment on these claims.

### 3. Grievance Process Claims

Harris alleges that he filed grievances concerning his observation cell placement and alleged lack of medical care; however, such grievances were either returned, unprocessed, or erroneously denied by Defendant Ellerbe. (ECF No. 33-1 at 4-5.) Harris also claims that Defendants Patterson and Stevenson denied institutional grievances associated with his disciplinary conviction. (Id. at 5-6.) However, "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Daye v. Rubenstein, No. 10-6938, 2011 WL 917248, at *2 (4th Cir. Mar. 17, 2011); Ashann-Ra v. Commonwealth of Virginia, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) ("[A] prison official's failure to comply with the state's grievance procedure is not actionable under § 1983.").

Further, to the extent Harris alleges that Defendant Ellerbe's actions violated his First Amendment right to court access (ECF No. 33-1 at 5, 7), Harris is required to demonstrate an impediment to the pursuit of a nonfrivolous legal claim resulting from such conduct. See Lewis v. Casey, 518 U.S. 343, 349 (1996) ("It is for the courts to remedy past or imminent official



interference with individual inmates' presentation of claims to the courts."); Strickler v. Waters, 989 F.2d 1375, 1384 (4th Cir. 1993) (Prisoner had a "basic requirement that he show specific harm or prejudice from the allegedly denied access."). Harris's Amended Complaint fails to allege any impediment or actual injury to a non-frivolous legal action resulting from Defendant Ellerbe's purported failure to properly process his grievances. Thus, the defendants' motion should be granted as to Harris's claims associated with the processing of his grievances.

### 4.     Fourteenth Amendment Claim

The Amended Complaint alleges due process violations by Defendant Rowe associated with Harris's disciplinary conviction, which was allegedly overturned by the South Carolina Administrative Law Court. (ECF No. 33-1 at 5-6.) Disciplinary proceedings which implicate a protected liberty interest demand due process. See Wolff v. McDonnell, 418 U.S. 539 (1974).[3] However, to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of life, liberty, or property by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). When the punishment does not cause the original sentence to be enhanced, protected

---

[3] Under Wolff, the inmate is entitled to the following: (1) written notice of the charges at least twenty-four hours in advance of the hearing; (2) written findings as to the evidence relied upon and reasons for the disciplinary action; and (3) the right to call witnesses and present evidence in his defense, provided there is no undue hazard to institutional safety or correctional goals. Wolff, 418 U.S. at 563-67. Additionally, an inmate should be permitted to seek counsel substitute (a fellow inmate or a prison employee) if he is illiterate or in complex cases that he cannot handle alone, and he is entitled to have the charges adjudicated by a fair and impartial tribunal. Id. at 569-71. Further, the United States Supreme Court has held within the context of prison disciplinary proceedings that due process is satisfied as long as there is "some evidence" supporting the Disciplinary Hearing Officer's findings. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445 (1985). "Ascertaining whether this [due process] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56.



interests will be generally limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472 (1995).

As an initial matter, the court observes that the unrefuted evidence shows that Harris did not lose any earned good-time credits as part of his disciplinary convictions; rather, he was sentenced to 360 days of disciplinary detention and 720 days' loss of visitation, telephone, and canteen privileges. (ECF No. 33-1 at 5.) However, Harris has no constitutional right to the privileges lost as a result of the disciplinary conviction. See Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 461 (1989) ("The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause.") (citation omitted); Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (holding that commissary restrictions "do not implicate due process concerns"); United States v. Alkire, No. 95-7885, 1996 WL 166400, at *1 (4th Cir. Apr. 10, 1996) ("[T]here is no constitutional or federal statutory right to use of a telephone while in prison."); see also Durdick v. Byars, C/A No. 3:11-2979-CMC-JRM, 2012 WL 5306263, at *5 (D.S.C. Sept. 28, 2012) (no protected liberty interest in telephone, canteen, or visitation privileges), adopted by 2012 WL 5305352 (D.S.C. Oct. 26. 2012).

Further, while Harris alleges that "his lengthy stay in disciplinary detention" resulted in mental and emotional suffering requiring mental health treatment (ECF No. 33-1 at 6), the United States Supreme Court has held that disciplinary segregation does not present the type of atypical, significant deprivation in which a state might create a liberty interest. See Sandin, 515 U.S. at 486; see also Beverati, 120 F.3d at 502 (4th Cir. 1997) (inmates do not possess a liberty interest in



avoiding administrative segregation); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) ("changes in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate are contemplated by his original sentence to prison"). As the alleged restriction of Harris's privileges and his placement in segregated confinement do not implicate a protected liberty interest or trigger the due process procedures required by Wolff, the defendants' motion should be granted as to these claims.

Harris also alleges that he was sanctioned to pay restitution as a result of the disciplinary conviction and asks the court to expunge his disciplinary record and return the "monies taken as restitution for this offense." (ECF No. 33-1 at 8.) As indicated by the South Carolina Administrative Law Court's order remanding Harris's disciplinary conviction for a new hearing, a prisoner has a liberty interest in their trust account funds sufficient to trigger the requirements of due process. (Id. at 24.) However, it is undisputed that Harris's disciplinary record for this conviction has been expunged and his restitution money returned since the filing of this action. (ECF No. 49 at 12; ECF No. 57 at 14.) Therefore, Harris's request for injunctive and declaratory relief associated with this claim have been rendered moot. See Williams v. Ozmint, 716 F.3d 801, 809 (4th Cir. 2013) ("A claim may be mooted 'when the claimant receives the relief he or she sought to obtain through the claim,' because the court no longer 'has [] effective relief to offer.'") (citation omitted). Harris's response in opposition to the defendants' motion appears to indicate that he also seeks damages for "countless hours spent filing this lawsuit, not to mention legal and court fees all of which he should be compensated for." (ECF No. 57 at 14.) The court observes that Harris is proceeding *pro se* in this action and that the court has allowed him to proceed *in forma pauperis*.



(ECF No. 10.) See, e.g., Kay v. Ehrler, 499 U.S. 432, 435 n.5 (1991) (a *pro se* litigant is not entitled to attorney's fees); Tabron v. Grace, 6 F.3d 147, 159 (3d Cir. 1993) ("There is no provision in [28 U.S.C. § 1915] for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant."). Therefore, it is recommended that the defendants' motion be granted as to this claim.

## RECOMMENDATION

For the above reasons, the court recommends that the defendants' motion to dismiss or, in the alternative, for summary judgment (ECF No. 49) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 23, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).